## ST. LOUIS BELT AND TERMINAL RAILWAY COMPANY, Appellant, v. MENDONSA et al.

### Division One, February 22, 1906.

1. **CONDEMNATION: Damage By Fire: Risk and Loss: Instruction.** In estimating the damage to a land-owner in a condemnation proceeding brought by a railroad, the jury may take into consideration the diminution in the value of the land not taken caused by the risk of fire from passing locomotives, but cannot take into consideration any loss of or damage to the land not taken that may thereafter be done by an actual fire which destroys or injures the property, but which may never occur. And instructions in the condemnation case should differentiate between the risk of fire, and actual loss after the fire has occurred. Depreciation in the value of property caused by the risk of fire, is a proper element of damage in the condemnation case; loss or destruction by actual fire can be compensated for by a separate action after the fire has occurred. [Following Railroad v. McGrew, 104 Mo. 282; Mathews v. Railroad, 121 Mo. 298; Railroad v. Donovan, 149 Mo. 93; Railroad v. Shoemaker, 160 Mo. 425; and holding that these cases are all in harmony.]

2. ———: ———: **Residence District.** Depreciation in the value of land platted for and especially adapted to residence purposes, caused by the risk of fire from passing locomotives, is a legitimate element of damages to be taken into consideration in a condemnation proceeding; and though the amount of the depreciation is not susceptible of accurate mathematical calculation, it is not a mere speculative damage, but may be left to the common sense and judgment of the jury for determination.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

AFFIRMED.

*J. E. McKeighan* for appellant.

(1) In the instruction given by the trial court the jury were told that they might not consider damage by fire as an element tending to depreciate the value of the

property about to be taken. The jury were told, however, as the Supreme Court said in the *McGrew* case and in the *Mathews* case they should be told, that in estimating damages this element should not be taken into consideration. In the case at bar none of the peculiar facts existed which the court found to exist, and which, it held, made a departure from the general rule excluding consideration of damage from fire necessary. In the case now before the court the railway company sought to condemn a right of way through a tract of land owned by respondents in the county of St. Louis. So far as the evidence discloses, this tract differs in no respect from adjoining property, so far as the uses to which it may be put were concerned. It was covered with forest trees, and was suitable for sub-division or residence purposes, as all land in the State of Missouri is. There were no buildings or improvements or any character upon it, hence there was no occasion to tell the jury that they might consider danger from fire as an element tending to depreciate the value of the property of respondents which was not taken. But, as just stated, the instruction given at the instance of appellant did not take from the jury the right to consider danger from fire as affecting the value of the property not taken; it simply told the jury that it should not, in estimating the damages, take this element into consideration. Railroad v. Donovan, 149 Mo. 93; Railroad v. Shoemaker, 160 Mo. 425; Railroad v. Boyle, 50 Mo. App. 480; Railroad v. Waldo, 70 Mo. 629. (2) The difference between taking into the estimate of damages the danger of fire, and considering this danger as affecting the value of the entire tract, is recognized by many authorities and text-writers. 2 Lewis on Em. Dom., sec. 497. The trial court did not, in its instruction, withdraw from the jury consideration or damages by fire, so far as it affected the value of the remainder of defendants' tract of land. It simply said to the jury, as the unbroken line of authorities in this State hold

that it should have done, that in estimating defendants'
damages the jury should not take into consideration
loss or danger from fire. All of the authorities, so far
as we have been able to discover, hold that, for the pur-
pose of estimating the defendants' damages, any loss
from fire is too speculative and remote to be consid-
ered. Railroad v. Abell, 18 Mo. App. 632; Mills on Em.
Dom., sec. 163.

*Robt. L. Shackelford* for respondents.

(1) In giving instruction 2 for plaintiff, the court
was in error, for the reason that the latter part of the
instruction informs the jury that they must deduct all
benefits, if any, peculiar to defendants' strip of land,
arising from the construction of said railroad over said
land, and there was no testimony in the case as to any
such benefits, and the instruction is therefore without
evidence upon which to base it. Railroad v. McGrew,
104 Mo. 294; Mathews v. Railroad, 121 Mo. 298; Lewis
on Eminent Domain, sec. 497; Mills on Eminent Do-
main, secs. 163, 166; Railroad v. McComb, 60 Me. 290;
Pierce v. Railroad, 105 Mass. 199; Railroad v. Mc-
Klosky, 110 Pa. St. 436. The Donovan case and the
Shoemaker case do not overrule the McGrew case or
the Mathews case, wherein the question at issue was
directly passed upon and decided in accordance with
the accepted doctrine and principles of law announced
in like cases throughout the country. (2) The claim
is also made that the statute making railroad com-
panies liable for damages by reason of fire from the
engines in use upon the railroad, gives the parties a
complete remedy. In reply to this proposition we say,
suppose such statute is in force, it does not and can-
not reach the damages caused by the depreciation in
value of defendants' land, caused by risk of damage by
fire which springs into existence and surrounds the
property through which the railroad passes, the mo-

ment it becomes an established fact that the railroad
will pass through such property, and especially so in
cases like the one under consideration, where the prop-
erty is at the very edge of a large city, and so situated
as to make it of great value for high-grade residences
soon to cover the entire property in question. Lewis on
Em. Dom., sec. 496. (3) Counsel for appellant says that
the court did not in its instructions withdraw from the
jury the consideration of damages by fire. This posi-
tion is untenable, as the question of fire or the risk of
fire was absolutely withdrawn from the jury as an ele-
ment to be considered by them in arriving at the
amount of damages to the property, and the jury were
given to understand by the instruction given for the
plaintiff that the element of fire could not be considered
at all by them. And by the careful reading of this in-
struction it will be seen that the only reasonable con-
clusion a jury could draw from the instruction is that
they were not to consider the effect of fire or the risk of
fire upon the property, either now or in the future.
These and other similar inconveniences which tend to
deteriorate the value of the farm and contribute to pro-
duce damage to the land not taken should be consid-
ered. Railroad v. McGrew, 104 Mo. 283; Railroad v.
Baker, 102 Mo. 553; Railroad, v. Waldo, 70 Mo. 629;
Railroad v. Blume, 27 N. E. 601; Railroad v. Gramey,
25 N. E. 728; Lewis on Eminent Domain, secs. 496-7;
Mills on Eminent Domain, sec. 162.

MARSHALL, J.—This is a proceeding to con-
demn two and forty-three hundreths acres of the de-
fendants' land lying in St. Louis county and about a
mile west of the city limits, and being a portion of a
certain tract of eighteen acres owned by the defend-
ants and heretofore laid out and platted for residence
property and known as Maplewood Heights, for a right
of way for the plaintiff railroad.

The commissioners allowed defendants $10,000 damages.

The court sustained exceptions to the report of the commissioners and awarded a trial by jury.

The jury assessed the defendants' damages at the sum of $5,600.

The defendants filed a motion for a new trial, alleging, among other grounds, that the court gave improper and illegal instructions at the request of the plaintiff and of its own motion. The trial court sustained the motion for a new trial on the ground that it had erred in giving the third instruction asked by the plaintiff, which was as follows: "The court instructs the jury that in estimating defendants' damages it should not take into consideration any supposed inconveniences arising from the blowing of whistles, or the noise and smoke of trains, nor the liability of danger or injury to defendants' property by fire set out by passing trains; nor the possibility of animals on defendants' land becoming frightened by passing trains." Thereupon, the plaintiff appealed to this court from the order granting a new trial.

I.

The only error assigned by appellant is the action of the trial court in granting a new trial for the reason that it held that the third instruction given by the court at the plaintiff's request was erroneous.

This was the only instruction given in the case which in any manner referred to the liability of danger or injury to defendants' property by fire set out by passing trains.

The defendants claim that the instruction was erroneous under the rules laid down by this court in Railroad v. McGrew, 104 Mo. 282, and Mathews v. Railroad, 121 Mo. 298. On the other hand, plaintiff contends that the instruction was proper under the ruling

of this court in Railroad v. Donovan, 149 Mo. 93, and Railroad v. Shoemaker, 160 Mo. 425.

In Railroad v. McGrew, supra, the trial court instructed the jury, among other things, that in estimating the damage to the defendant, the jury should not take into consideration "the risks of damage by fires from passing locomotives," and this was assigned as error. This court, speaking through MACFARLANE, J., said: "It is true, as a general proposition, damages should be assessed on the assumption that the road will be properly contructed and operated, and that it will comply with all the laws of the State regulating its construction, management and operation. For failure of duty in these respects it will be liable to an action at common law, or the land-owner will have such remedy as may be provided by statute. [Citing cases.] Notwithstanding these settled principles, which apply generally, we are of the opinion that the facts in this case are exceptional, and that the instructions as limited by the court were proper." The court then discussed the situation of the remaining portion of the land, the risks that would be incurred in the operation of the defendant's mining plant, and then said: "So it will be seen that the general rule cannot, in justice, be applied to its full extent, under the facts in this case. It would not be proper to estimate the possible damage from fires or injuries to persons. Neither may ever occur, and to take them into the estimate would be mere speculation. We think they may be properly considered, however, in so far as they tend to depreciate the value of the whole property, and to affect the proposed changes, but no further." [Citing cases.]

Mathews v. Railroad, 121 Mo. 298, was an action for damages caused to the improvements on the plaintiff's property by fire escaping from passing trains. The petition was in two counts; the first a count at common law, and the second a count based upon a statute, now section 1111, Revised Statutes 1899, making rail-

road companies responsible for all damages caused by
fire communicated from locomotive engines. The de-
fendant pleaded the unconstitutionality of the statute.
Upon the trial the defendant offered to prove that when
the right of way was acquired by condemnation, the
damages that might be caused by fire from locomotive
engines were included in the compensation allowed
plantiff, and asked the court to instruct the jury that if
the commissioners in the condemnation proceeding
took into consideration the danger to plaintiff's prop-
erty by accidental fire, the plaintiff could not recover.
Speaking to that question this court, per GANTT, J.,
said: ''When a part of a tract of land is taken for rail-
road purposes under condemnation proceedings, the
jury or commissioners may properly take into consider-
ation the risk from fire to the buildings, fences, timber
or crops upon the remainder, in so far and to the ex-
tent only that it depreciates the value of the property,
but compensation for a probable or future loss by fire
is entirely too speculative and remote to be made the
basis of damages.'' The court then cited and quoted
from Railroad v. McGrew, supra, and then added:
''The plaintiff's claim before the commissioners was
damage from the risk of fire. In so far as that risk af-
fected the value of his property not taken by depreciat-
ing it, it was a proper claim. There was nothing to show
that it was unjustly extended to an estimate of dama-
ges that might accrue at some future time, or might
never occur. The damages were assessed at $3,000,
and paid. After the assessment, the plaintiff held his
property in its depreciated condition. How defendant
can arrive at the conclusion that if this property in
its depreciated condition is subsequently destroyed,
plaintiff is not entitled to recover whatever damages
shall accrue from such subsequent destruction, we can-
not understand. The prior condemnation assessment
has been made and settled. After that, plaintiff owns
what is left absolutely, as he owned the whole before a

portion was appropriated by the road.   The subsequent damages constitute no part of the first."

The rule thus announced may be briefly stated to be this: that in the condemnation proceedings the risk or fire from passing locomotive engines may be considered by the commissioners in determining the damage to the remaining portion of the property not taken, and compensation may be allowed the defendant for the depreciation in value of his land by reason of such risk. That is, may take into account the difference in the value of the remaining part of the land caused by the risk aforesaid, and that difference would consist of the depreciation in value of the land from such cause.

But the commissioners in condemnation cannot take into consideration the possibility of the destruction of buildings that may be on the land at the time of the condemnation proceeding or that may be subsequently erected thereon, and speculate as to the damage that may be done to the owner by the destruction thereof, for the buildings may never be destroyed, and, therefore, that element of damage being purely speculative, the owner is afforded ample remedy under the statute to recover from the railroad any actual damage he may afterwards suffer by reason of the buildings on the land being afterwards destroyed, whenever such a loss occurs.   Or, stated otherwise, the commissioners are authorized to take into account the depreciated value or salable value of the land caused by the risk to be apprehended from fires that may never occur.   But for actual loss from the actual destruction of buildings or improvements on the land arising from fires communicated by locomotive engines, the owner is not entitled to recover against the railroad until and unless such loss actually occurs.   And after loss the owner's remedy is under the statute or at the common law for the damage and loss which he will then have actually sustained.

The rule so announced in the cases cited is the general rule of law. [2 Lewis on Em. Dom., secs. 496 and 497.]

The plaintiff contends that the subsequent cases of Railroad v. Donovan and Railroad v. Shoemaker, supra, announce a different rule. In Railroad v. Donovan, supra, the plaintiff contended that the court below had permitted defendant's expert to testify as to damages *en gross*, without specifying the elements that went to make up the whole, and that thereby witnesses included in their estimates improper elements of damages, such as dangers from fires caused by locomotive engines, etc., but this court, speaking through BRACE, J., pointed out that the trial court "at the instance of the plaintiff excluded from the jury by clear and pointed instruction" all such objectionable elements of damage, and instructed the jury as to the true measure of damages in plain and unmistakable terms. There is nothing in the decision in that case which in any manner militates against or modifies the rule laid down in Railroad v. McGrew and Mathews v. Railroad, supra. On the contrary what is there said harmonizes with what was said in the cases cited, and the court in that case properly excluded from the consideration of the jury, at the instance of the plaintiff, all consideration of possible future damage to the improvements on the land arising from fire communicated by locomotive engines. The question of whether or not the risk of fire from such cases would cause a depreciation in the value of the remaining land was not considered, discussed or decided in that case.

In Railroad v. Shoemaker, supra, the trial court at the instance of the plaintiff instructed the jury that they could not take into consideration any damages the defendant might sustain "by reason of destruction of property by fire which may be set or caused by the trains of the railroad company in operating its line, and any such damages, if any he ever sustained, will be

the proper subject-matter of future actions, but in de-
termining the amount of compensation which you will
allow the defendant in this action, you can not take
into consideration nor allow any sum or amount what-
ever on account of exposure or liability of property to
damage or destruction by fire caused or set by the
trains in the operation of the road.'' As this instruc-
tion was given at the instance of the plaintiff, the con-
demning party, and as the plaintiff was the appellant
in that case, the correctness of that instruction was not
called in question, discussed or decided by this court,
but the whole decision in that case was as to the correct-
ness of other instructions given by the court at the re-
quest of the defendants, and as to which plaintiff as-
signed error. The court said: ''Thus, in reaching
their conclusion as to the market value of the portion of
defendant's farm which was not appropriated, they
may, in estimating the diminution in value of the part
left, take into consideration the amount and value of
the land taken for the right of way; the size and shape
of the two tracks into which the farm is divided by the
location of the road through it, the cuts and fills, the in-
convenience in getting from one part of the farm to the
other, any inconvenience in getting to water; and on
the other hand, they were instructed on the part of the
plaintiff that in reaching the amount of the damages
they would not consider any damage that might result
from fires in the future, as such would be the subject-
matter of future actions; nor should they consider the
danger to life or limb from trains passing over the
road; nor any damage from smoke or noise from pass-
ing trains over the road or from ringing of bells
or sounding of whistles, and the court expressly
advised then what was meant by market value. In a
word, by a process of exclusion and inclusion the jury
were advised how to reach the amount of damages de-
fendant had suffered by the appropriation of his land,
both as to the part taken for right of way and the de-

preciation in the market value of the portion not taken."

No one can fairly contend that what was said there states anything in conflict with the rules laid down in Railroad v. McGrew or Mathews v. Railroad, supra. The essence of what was said in the Shoemaker case was, that, in estimating the damages in the condemnation proceeding, the jury might take into consideration the diminution in the value of the land not taken caused by the risk of fire, but could not take into consideration any damage to or destruction of property that might thereafter be actually done to the same but which might never occur, as the latter would be properly the subject of future actions.

Instruction numbered 3, given at the instance of the plaintiff, only partially stated the rule of law, and in the form given was calculated to mislead the jury to the injury of the defendants. As drawn the instruction complained of, and for the giving of which the new trial was granted, not only directed the jury to exclude from consideration any damage that might in the future accrue to the defendants from fires being communicated to buildings or improvements on the land by passing locomotive engines, but likewise forbade the jury to take into account the risk of such fires and the effect of such risk upon the remaining land and the depreciation thereof in consequence of such risk.

It is true that ordinarily mere non-direction in a civil case does not constitute error. But the instruction under discussion amounts to more than mere non-direction. It directs the jury not to take into consideration the liability of danger or injury to defendants' property by fire set out by passing trains. The liability is the risk of fire, which, under the rules stated in the cases cited, constitutes a legitimate element of damage in a condemnation case, for that risk may depreciate the value of the property. The instruction as drawn does not differentiate between the risk of fire and the

actual loss after the fire has occurred. The former can only be taken into account in condemnation cases. The latter can only be compensated for in an action after the loss occurs.

The tract of land owned by the defendant in this case had been platted for residence purposes and was especially adapted to such purposes. The taking of a portion thereof for a railroad right of way by the plaintiff and the constant passing of trains by day and by night for the purposes contemplated by the plaintiff company might, to say the least of it, affect the value of the remaining land for residence purposes. On the other hand, the establishment and maintenance of a railroad through the land might make the land valuable for warehouse purposes, but would not make this land any more valuable for such purposes than it would any other land abutting the railroad. The benefit, therefore, was such a benefit as was common to all the owners of land abutting the road and was not a special benefit to the defendants' land, and, therefore, could not properly be taken into account in determining the amount of the defendants' damage.

On the other hand, the presence of the railroad in such close proximity to residences that might be built on the remaining land, and for which the land was intended, might depreciate the value of the land for such purposes, and such depreciation was a legitimate element of damage to be taken into account in the condemnation proceeding. True, the amount of depreciation would depend upon the opinion of experts and upon the common sense and judgment of the jurors, and was not susceptible of accurate mathematical calculation, but it was, nevertheless, a proper element of the defendants' damage, and, though not possible of exact mathematical computation, it was not a mere speculative damage, such as the cases cited speak of in reference to the pos-

193 Sup——34

sible destruction of improvements on the land that may or may not ever occur at some future time.

For the foregoing reasons the circuit court committed no error in granting a new trial in this case, and its judgment is therefore affirmed.